UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-cr-00374-JAR |
| | ) | |
| | ) | |
| HAROLD G. LONG, | ) | |
| | ) | |
| Defendant. | ) | |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

1. **PARTIES**:

The parties are Defendant Harold G. Long, ("the Defendant"), represented by defense counsel Kathryn B. Parish, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

2. **GUILTY PLEA**:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the Defendant's voluntary plea of guilty to Count 1 of the Superseding Indictment, the United States agrees to dismiss the remaining counts against him in the Superseding Indictment (i.e., Counts 3 and 9). In addition, the United States agrees that no further federal criminal prosecutions will be

brought in this District relative to the Defendant's wire fraud scheme charged in the Superseding Indictment, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. **The parties further agree that, at the time of sentencing, the United States will request a sentence no more than three years' probation**. The defendant may request any sentence authorized by law.

**3. ELEMENTS:**

As to Count 1, the defendant admits to knowingly violating Title 18, United States Code, Section 1349, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

One, two or more persons, including Defendant, came to an understanding to participate in the scheme charged in the Indictment;

Two, Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and

Three, at the time Defendants joined in the agreement or understanding, Defendant knew the purpose of the agreement or understanding.

**4. FACTS:**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Between 2020 and 2023, in the Eastern District of Missouri, Defendant Harold G. Long participated in a scheme designed by Kenneth Sparks to defraud pandemic loan lenders. To execute the scheme to defraud, Defendant Sparks obtained—and then subsequently exploited—his position of authority as a minister at Faith Walk Ministry. In that position of authority, Defendant Sparks worked to secure the trust of Faith Walk Ministry parishioner so that he could have fraudulent PPP loans taken out in their names and enrich himself with the proceeds. In an attempt to conceal his fraud scheme from many of his parishioners, Defendant Sparks often told them that he was an "Apostle" of God, whose decisions and decrees should not be questioned.

To have fraudulent PPP loans taken out in the names of his parishioners and associates, Defendant Sparks and his co-conspirators obtained those individuals' personal and financial information through various lies and falsehoods. For instance, Defendant Sparks often told parishioners that they needed to provide their information so that his co-conspirators could fix their credit scores. On other occasions, Defendant Sparks told parishioners that his co-conspirators needed their information to secure funding for Faith Walk Ministry. Despite these representations, Defendant Sparks and his co-conspirators used Faith Walk Ministry parishioners' personal and financial information to take out fraudulent PPP loans in their names for the personal enrichment of Defendant Sparks and Defendant Oboite.

As another step in the fraud scheme, Defendant Sparks encouraged Faith Walk Ministry parishioners to open new bank accounts at Navy Federal Credit Union, where the fraudulent PPP loan proceeds were later deposited at his and Defendant Oboite's direction. Additionally, Defendant Sparks commissioned the creation of false and fraudulent tax documents in the names of his parishioners and associates. Those fraudulent tax documents, which were later submitted to

the lenders in support of the fraudulent PPP loans, included fictitious earnings for Defendant Sparks' parishioners and associates.

To execute the fraudulent scheme, Defendant Sparks and Defendant Oboite worked with others in the conspiracy, including Mya McClain and Augustine Hardin to submit the fraudulent sole proprietorship PPP loans in the names of Defendant Sparks' parishioners and associates. Defendant Oboite specifically coached Defendant McClain and others on how to fill out these fraudulent PPP loan applications. As directed by Defendant Sparks, either Defendant McClain or Defendant Hardin submitted or substantially assisted in the submission of fraudulent sole proprietorship PPP loan applications in the names of Faith Walk Ministry parishioners. Each of those fraudulent PPP loan applications listed businesses that did not exist or included revenues that were never earned. The vast majority of the fraudulent PPP loans completed by Defendant McClain or Defendant Hardin—including the fraudulent PPP loans submitted in their names—were submitted via interstate wiring from Faith Walk Ministry, within the Eastern District of Missouri.

In addition to taking out fraudulent sole proprietorship PPP loans in the names of Defendant Sparks' parishioners and associates, Defendant Sparks and Defendant Oboite also directed Defendant H. Long to sign certain documents. These documents were also submitted with PPP loan applications. These documents contained false information about the businesses for which the applications were being submitted. Those businesses included Jabin II and Faith Walk Ministry Community Development Corporation. Defendant Long did not read these documents before signing them and chose to sign them nonetheless, despite the fact that he was unaware of their full contents.

On or about April 4, 2021, Defendant McClain—with the assistance of Defendant H. Long—submitted a fraudulent PPP loan application for Jabin II. Included in the fraudulent PPP loan application for Jabin II was the material misrepresentation that the company paid an average monthly payroll of $64,657.00, as submitted through falsified tax documents that were signed by Defendant Long and included with the loan application. These were not the actual tax documents that were filed with the IRS, but rather separate documents that had been created for the purpose of submitting this PPP loan application In truth and fact, as Defendant McClain and Defendant H. Long well knew, Jabin II did not have any payroll expenses. In support of the fraudulent PPP loan application that Defendant McClain submitted for Jabin II, Defendant McClain also submitted false and fraudulent tax forms, which were approved and signed by Defendant H. Long. Included in Defendant H. Long's false and fraudulent tax documents for Jabin II was the misrepresentation that Jabin II earned $1,989,000.00 in gross receipts or sales during 2019. In truth and fact, as Defendant H. Long and Defendant McClain well knew, this figure was vastly inflated. Despite Defendant H. Long's knowledge of the actual payroll and gross receipts of Jabin III hesigned those documents without reading them or checking their accuracy. Based on those material misrepresentations, the participating PPP lender (TAB Bank) wired a total of $161,642.00 into a bank account controlled by Defendant H. Long.

Defendant McClain—with the assistance of Defendant H. Long—submitted a similar fraudulent PPP loan application for Faith Walk Community Development Corporation on or about March 26, 2021. Included in the fraudulent PPP loan application for Faith Walk Community Development Corporation was the material misrepresentation that the company paid an average monthly payroll of $64,882.00. In truth and fact, as Defendant McClain and Defendant H. Long

well knew, Faith Walk Community Development Corporation did not have any payroll expenses. Based on those material misrepresentations, the participating PPP lender (Customers Bank) wired a total of $162,204.00 into a bank account controlled by Defendant H. Long. Defendant Long signed these documents without reading or checking their accuracy.

Based on the material misrepresentations included in the dozens of fraudulent PPP loan applications that were completed and submitted at the direction of Defendant Sparks and Defendant Oboite (with the assistance of Defendant McClain and Defendant Hardin), participating PPP lenders paid out at least $1,000,000 in government-backed funds.

**5. STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty, as to Count 1, is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

**6. U.S. SENTENCING GUIDELINES: 2025 MANUAL:**

The Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

**a. Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense level for Count 1 is **7,** as found in Section 2B1.1(a).

**(2) <u>Specific Offense Characteristics</u>:** The parties agree that the following Specific Offense Characteristics apply:

The parties agree that Defendant's offense level should be increased by **14 levels** under Section 2B1.1(b)(1)(H), because the loss amount was more than $550,000 but less than $1,500,000.

The parties agree that **2 levels** should be added pursuant to Section 2B1.1(b)(12) because the offense involved conduct described in 18 U.S.C. § 1040.

**b. <u>Chapter 3 Adjustments</u>:**

**(1) <u>Acceptance of Responsibility:</u>** The parties agree that **3 levels** should be deducted pursuant to Section 3E1.1(a) and (b), because the Defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the Defendant's intention to plead guilty. The parties agree that the Defendant's eligibility for this deduction is based upon information presently known. If, subsequent to the taking of the guilty plea, the Government receives new evidence of statements or conduct by the Defendant which it believes are inconsistent with Defendant's eligibility for this deduction, the Government may present said evidence to the Court, and argue that the Defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**<u>Other Adjustments</u>:** The parties have no further agreement regarding any other adjustments.

**d. <u>Estimated Total Offense Level</u>:** The parties have no agreement on a total offense level. If the presentence investigation report determines a different total offense level, the parties

are permitted to object to or accept any enhancements or reductions in the presentence investigation report.

**e. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the findings of the Presentence Report as to the Defendant's criminal history and the applicable category. The Defendant's criminal history is known to the Defendant and is substantially available in the Pretrial Services Report.

**(1) Adjustment for Certain Zero-Point Offenders:** If the defendant does not receive any criminal history points from Chapter 4, Part A, then the parties agree that two levels should be deducted from the total offense level under Section 4C1.1(a), because the defendant meets all of the criteria under Section 4C1.1(a)(2) through (a)(10).

**f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a. Appeal:** The Defendant has been fully apprised by defense counsel of the Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial

motions, discovery, the guilty plea, the constitutionality of the statute(s) to which Defendant is pleading guilty and whether the Defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

**b. Habeas Corpus:** The Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to

sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the Defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the Defendant and may impose special conditions related to the crime Defendant committed. These conditions will be restrictions on the Defendant to which the Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The Defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the Defendant agrees to pay at the time of sentencing. Money paid by the Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and

costs of supervision. The Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The Defendant agrees to provide full restitution to all victims of all charges in the Indictment.

g. **Forfeiture:** The defendant agrees to the forfeiture set forth in the Forfeiture Allegation in the Superseding Indictment to which the Defendant is pleading guilty.

The Defendant also agrees to the entry of a forfeiture money judgment in the amount of restitution determined by the court at sentencing. The Defendant further agrees that the proffer of evidence supporting this guilty plea is sufficient evidence to support such forfeiture.

The Defendant agrees that the Court may enter a consent preliminary order of forfeiture at the time of his guilty plea or at any time before sentencing. The Defendant further agrees that this order will become final as to the Defendant when it is issued and will be part of his sentence pursuant to Fed. R. Crim. P. 32.2(b)(4)(A).

The Defendant agrees that the Government may choose in its sole discretion how it wishes to accomplish forfeiture, whether by criminal or civil forfeiture, using judicial or non-judicial forfeiture processes. The Defendant waives all rights to assert any interest in the forfeited property in the future, and will withdraw any prior claims made to forfeited property, whether they were made in a judicial or non-judicial forfeiture process.

The Defendant agrees (i) to assist the Government in identifying all property that is subject to forfeiture, (ii) to take any and all actions necessary to transfer title and ownership of said

property to the Government, and (iii) to help the Government to rebut the claims of nominees and/or alleged third party owners, including by testifying truthfully in any judicial forfeiture proceeding.

The Defendant knowingly and intelligently waives all constitutional and statutory challenges in any manner to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Defendant further knowingly and intelligently waives any rights the Defendant may have (i) for notice of the forfeiture to be given in the charging instrument, (ii) for a jury or the Court to determine what property is subject to forfeiture, (iii) for the Court to explain the forfeiture at the Defendant's change of plea hearing, and (iv) for the forfeiture to be made part of the oral pronouncement of sentence and included in the judgment.

**9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The Defendant further understands that by this guilty plea, the Defendant expressly waives all the rights set forth in this paragraph.

The Defendant fully understands that the Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The Defendant's counsel has explained these rights and the consequences of the waiver of these rights. The Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The Defendant is fully satisfied with the representation received from defense counsel. The Defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the Defendant has requested relative to the Government's case and any defenses.

The guilty plea could impact Defendant's immigration status or result in deportation. In particular, if any crime to which Defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the Defendant of the possible immigration consequences, including deportation, resulting from the plea.

**10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the Defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the Defendant states that no person has, directly or indirectly,

threatened or coerced the Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The Defendant further acknowledges that this guilty plea is made of the Defendant's own free will and that the Defendant is, in fact, guilty.

**11. CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if the Defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12. NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

3-4-2026
Date

Derek Wiseman
Assistant United States Attorney

3-4-26
Date

Harold G. Long
Defendant

3/4/2026
Date

Kathryn B. Parish
Attorney for Defendant